UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUSAN C. LAURITSEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:22 CV 1073 JMB |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. 13). For the reasons set forth below, the Motion is **GRANTED**.

**I.   Background**

The only evidence presented by the parties is Plaintiff's sworn statement (Doc. 14-2) and a police report (Doc. 14-1). The following facts are undisputed.

After 10:30 p.m. on September 5, 2017, Plaintiff, Susan C. Lauritsen, was operating her Vespa scooter on Clayton Road[1] in Forest Park near the entrance to a driveway leading down to the St. Louis Metropolitan Police Mounted Patrol Stables (Doc. 14-2, pp. 13, 15, 22). At the time, she was on her way to work as a St. Louis County park ranger (Id. 13, 22). As she was heading west on Clayton Avenue, and going about 30 miles per hour, she observed headlights in the driveway to her left, travelling at a "pretty high rate of speed" towards her (Doc. 14-2, p. 17). At the time, she was even with the driveway and could see that the headlights were about 15 feet away

---

[1] The parties refer to the roadway as Clayton Road, but it is more likely to be Clayton Avenue, which is located inside Forest Park and which runs from the St. Louis Parks Department buildings, between the Highlands Golf course and the stables, and dead ends at Vandeventer Avenue, outside of the park boundaries.

(Id. 19-20). The vehicle did not strike her. (Id. 21). While Plaintiff believed that the vehicle was "going awfully fast" towards her, she does not remember much after seeing the headlights. She does not know if the other vehicle actually entered Clayton Avenue or if she lost control of her Vespa or if she took any action to avoid a collision (Id. 21-22).[2] She does not know if she applied her brakes or if she hit the curb (Id. 25). In sum, she testified that "[t]he only thing I remember is seeing it, and being frightened, and the next thing I know, I'm in the hospital" (Id. 39). There are no additional witnesses to the accident.

In a police report completed by Officer Paula A. Brant, the following information is recorded:

> At approximately 2255 hours, I was off duty and leaving the Mounted Patrol Stables located at 5120 Clayton Ave. I was traveling westbound in the 5400 block Clayton Ave., when I observed a person, later identified as, driver #1, Susan Lauritsen. She was sitting on the side walk, next to unit #1, a white Vespa.
>
> It appeared that Lauritsen had been involved in an accident with the listed unit. She appeared to have injuries to her face, right arm and right leg.
>
> \*\*\*
>
> Due to Lauritsen's injures [sic], she was unable to recall what happened prior to the accident and was unable to provide me with a statement.
>
> \*\*\*
>
> At the time of this incident, it appeared as a single unit accident. There was minor damage to the right side of the unit #1.
>
> (Doc. 14-1, p. 5-6).

---

[2] In response to Defendant's statement of uncontroverted facts, Plaintiff states that "Plaintiff's actions in operating her vehicle and reaction to avoid an imminent collision is why the vehicle leaving the driveway did not strike her vehicle" (Doc. 24, p. 3). The evidence cited, however, does not support the purported facts that Plaintiff operated her Vespa in a manner to avoid a collision. The evidence only supports the conclusion that Plaintiff does not remember whether she did anything or not in reaction to seeing the headlights.

At the time of the incident, Plaintiff alleges that she purchased an insurance policy from Defendant that included uninsured motorist protection. No party has provided a copy of that insurance policy although it is referenced in the parties' pleadings. Defendant admits that Plaintiff purchased a policy, that it included uninsured motorist protection, and that it was in full force and effect at the time of the accident (Doc. 9, ¶¶ 2-4). However, Defendant denies that Plaintiff is entitled to anything pursuant to the policy.

In her Complaint, which was filed in state court and removed to this Court on October 7, 2022, Count I alleges a negligence claim against the Jane Doe driver of the vehicle that approached Plaintiff; Count II alleges a breach of contract claim against Defendant; and Count III alleges a vexatious refusal to pay claim against Defendant (Doc. 1-4). Plaintiff dismissed her claim against Jane Doe on January 5, 2023 (Docs. 18, 19). Plaintiff's prayer for punitive damages was stricken on November 30, 2022 (Doc. 12).

**II.    Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party

may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

### III. Discussion

Defendant's sole argument is that Plaintiff cannot demonstrate that any negligence on the part of the other driver caused her damages and that, as a result, she cannot show that she is entitled to coverage under the uninsured motorist section of her car insurance policy or vexatious refusal to pay. Because this is a diversity case, the Court applies the substantive law of the State of Missouri and federal procedural law. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996); see also Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Miller v. Honkamp Krueger Fin. Serv., Inc., 9 F.4th 1011, 1016 (8th Cir. 2021).

In order to recover under the terms of the uninsured motorist section in her insurance policy, Plaintiff must demonstrate: "(1) that the other motorist was uninsured, (2) that the other motorist is legally liable to the insured, and (3) the amount of damages." Oates v. Safeco Ins. Co. of America, 583 S.W.2d 713, 715 (Mo. 1979). As to the second requirement, Plaintiff must show that the uninsured motorist was legally at fault, i.e. negligent. Amato v. State Farm Mut. Auto Inc. Co., 213 S.W.3d 202, 207-208 (Mo. App. Ct. 2007) ("Under Missouri law, an insured is required to establish liability, that is causal negligence or fault, on the part of the other driver in order for the insured to be legally entitled to collect and thus prevail on a claim for underinsured-motor-vehicle coverage." (citation and quotation marks omitted)). Thus, for Plaintiff to recover under the uninsured motorist provision of her insurance policy, she must show that the driver of the other

vehicle was negligent or at fault.  Bell v United Parcel Services, 724 S.W.2d 682, 685 (Mo. App. Ct. 1987).

To establish negligence, Plaintiff must demonstrate that "(1) the [other driver] had a duty to the plaintiff; (2) the [other driver] failed to perform that duty; and (3) the [other driver's] breach was the proximate cause of the plaintiff's injury." McComb v. Norfus, 541 S.W.3d 550, 554 (Mo. 2018) (citation and quotation marks omitted).  Drivers have a variety of duties vis-à-vis other drivers on the road – the two most important and common are to keep an adequate look out and avoid excessive speed.

Drivers have a duty to "keep a vigilant lookout." Savage v. Dittrich, 589 S.W.3d 628, 633 (Mo. App. Ct. 2019).  In order to establish a failure to keep an adequate lookout, Plaintiff must demonstrate that "the [other driver] saw or could have seen plaintiff in time to have avoided the collision . . . ." Id.; Herrington v Medevac Medical Response, Inc., 438 S.W.3d 417, 421 (Mo. App. Ct. 2014) ("The essence of a failure to keep a careful lookout claim is a failure to see and a failure to act." (quotation marks and citation omitted)).  "The inquiry is two-fold: if the driver was keeping a careful lookout, could the driver have seen the danger; and, if the driver could have seen the danger, did the driver have the ability to take some precautionary measure such as veering, utilizing a horn, or slowing speed to prevent the accident? The evidence must support a finding that a driver had the means and ability to have avoided a collision." Hayes v. Price, 313 S.W. 645, 650 (Mo. 2010).  As to excessive speed,

> In automobile cases, excessive speed is often an issue. The mere fact that one is not exceeding the speed limit does not preclude a finding of excessive speed.  Whether a particular speed is excessive depends on the circumstances and conditions existing at the time of the collision.  Such circumstances include not only the condition of the road, but also the lighting available, the driver's familiarity with the road, and the mechanical condition of the car.

Smith v. Missouri Highways & Transp. Comm'n, 372 S.W.3d 90, 95 (Mo. App. Ct. 2012) (quotation marks and citations omitted).

In her Complaint, Plaintiff alleges that the other driver failed to keep a proper lookout, drove at an excessive speed, was reckless, failed to pay adequate attention, and failed to avoid the accident.  In essence, Plaintiff's alleges that the other driver failed to keep an adequate lookout and drove at an excessive rate of speed.

The only evidence that Plaintiff presents as to the actions of the other vehicle are that she perceived it was going fast and it was 15 feet from her at the intersection of the driveway and Clayton Avenue.  There is no evidence that the other driver was violating any rules of the road, that she was driving too fast to stop at the intersection, that she failed to adequately observe the roadway and other vehicles, or that she failed to take precautionary measures to avoid a collision.  Likewise, there is no evidence that Plaintiff took any action in response to the other vehicle, evasive or otherwise, or that the other vehicle was the proximate cause of her injuries.[3]  Harris v. City of St. Louis, 658 S.W.3d 49, 53 (Mo. App. Ct. 2022) (defining proximate cause).  Plaintiff's perception and fear do not translate into a finding that the other driver was negligent in the operation of her vehicle.  Instead, Plaintiff merely speculates that the other driver approached an intersection too fast and she was required to take evasive action to avoid the collision.  Speculation, however, is no substitute for evidence.  Clay v. Credit Bureau Enterprises, Inc., 754 F.3d 535, 539 (8th Cir. 2014) ("To survive a motion for summary judgment, the nonmoving party must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy." (cleaned up)).  There being a dearth of evidence, summary judgment must be granted in favor of Defendant on Count II.

---

[3] Defendant admits that the other car was travelling at a "high rate of speed" (for purposes of summary judgment) but denies that Plaintiff took any action in response (Doc. 27, p. 1).

In light of this conclusion, judgment also must be granted on Count III. Plaintiff claims that Defendant's refusal to pay amounts to "vexatious refusal" and that she is entitled to recover pursuant to state statute. Mo. Rev. Stat. § 375.420. To establish a claim for vexatious refusal to pay, Plaintiff must show: (1) the existence of an insurance policy; (2) that Defendant refused to pay; and (3) that Defendant's refusal to pay was without reasonable cause or excuse. Macheca Transp. v. Philadelphia Indem. Ins. Co., 649 F.3d 661, 674 (8th Cir. 2011) (citing Dhyne v. State Farm Fire & Cas. Co., 188 S.W.3d 454, 457 (Mo. 2006)). Plaintiff has not responded to Defendant's argument that it is entitled to judgment on this claim nor has she provided any evidence to support her claim. As such, there is no evidence that Defendant's failure to pay was without reasonable cause or excuse. In any event, "[t]here can be no recovery for vexatious refusal where there is no judgment for the plaintiff on the insurance policy." Aziz v. Allstate Ins. Co., 875 F.3d 865, 869 (8th Cir. 2017).

**IV.    Conclusion**

For the foregoing reasons, Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. 13) is **GRANTED**. Judgment shall enter accordingly.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of April, 2023